## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SARITA A. DIXON, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                                    **NO. 23-313-BAJ-RLB**

**LIBERTY MUTUAL INSURANCE**
**COMPANY, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 10, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SARITA A. DIXON, ET AL.                                      CIVIL ACTION

VERSUS                                                       NO. 23-313-BAJ-RLB

LIBERTY MUTUAL INSURANCE
COMPANY, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Sarita Dixon and Troy J. Dixon's ("Plaintiffs") Motion to Remand Proceeding to State Court (the "Motion"). (R. Doc. 8). The Motion is opposed (the "Opposition") by Liberty Personal Insurance Company, Liberty Mutual Insurance Company, and Liberty Mutual Fire Insurance Company (collectively, "Defendants"). (R. Doc. 14). Plaintiffs filed a reply. (R. Doc. 19).

I.      **Background**

Plaintiffs own a home at 4911 Piney Point Ave., Baton Rouge, Louisiana 70817 (the "Home") that caught fire on December 25, 2022, "rendering it a total loss." (R. Doc. 1-1 at ¶¶ 2, 9). The Home was insured by Defendants under a policy (the "Policy") that had been procured by Michelle A. Nash ("Nash"). (R. Doc. 1-1 at ¶ 3). On February 24, 2023, Defendants notified Plaintiffs that the Home's "insurance policy's limits were not sufficient to rebuild [or] replace [the H]ome, even at [Defendants'] estimates on the costs[.]" (R. Doc. 1-1 at ¶ 11).

On March 15, 2023, Plaintiffs filed their Petition for Damages against Defendants and Nash in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana. (R. Doc. 1-1). Plaintiffs assert that Defendants and Nash are "liable jointly and *in solido* [for]: a. Failure to use reasonable diligence in obtaining sufficient insurance to provide coverage for petitioners' home; b. Failure to inform petitioners that sufficient coverage had not been acquired to cover the costs of rebuilding or replacing their home; c. Failure to [account for] the increased cost of building

2

materials and labor when determining the appropriate base policy limits for [the H]ome; d. Misrepresenting to petitioners that there was sufficient insurance coverage to pay for replacement of a total loss of the property; [and] e. Setting the policy limits too low to provide full replacement cost coverage as instructed and misrepresented[.]" (R. Doc. 1-1 at ¶ 14). In support, Plaintiffs claim that Nash and Defendants represented to Plaintiffs that the Policy "would cover 100% of the cost to rebuild/replace the [H]ome[.]" (R. Doc. 1-1 at ¶ 12).

Because Nash was the only defendant preventing complete diversity, Defendants argued Nash was improperly joined and removed the case to the Middle District of Louisiana. (R. Doc. 1). In response, Plaintiffs filed the subject Motion. (R. Doc. 8). Plaintiffs argue Nash was properly joined because Nash "determined or approved changes in the base policy limit which did not provide full replacement costs coverage for the [Home] while [also] misrepresenting to the Plaintiffs that the policy did provide full replacement costs coverage." (R. Doc. 8-1 at 13, 14). Defendants argue Nash was improperly joined because the claims against her are perempted by Louisiana Revised Statute § 9:5606, and even if they are not, Plaintiffs failed to allege facts sufficient to state a cause of action against Nash. (R. Doc. 14). Plaintiffs maintain that their claims against Nash are not perempted and are supported by sufficient facts. (R. Doc. 19).

## II.    Law and Analysis

### A.    Legal Standards

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby,* 326 F. 3d 644, 649 (5th Cir. 2003). To meet its burden, the removing party must show either an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.*, at 647. This Court will consider the latter.

"[T]he test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant[.]" *Smallwood v. Illinois Cent. R. Co.,* 385 F. 3d 568, 573 (5th Cir. 2004). Courts should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether [a] complaint states a claim under state law against the in-state defendant." *Id*. When conducting a Rule 12(b)(6) analysis, courts must determine whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F. 3d 193, 200 (5th Cir. 2016) (citations omitted). To make this determination, courts must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 239 (5th Cir. 2009).

Causes of action against insurance agents must be brought "within one year from the date of the alleged act, omission, or neglect [of the agent], or within one year [from when the plaintiff actually or should have] discovered [the act, omission, or neglect and] at the latest within three years from the date of the [] act, omission, or neglect." La. R.S. § 9:5606. In other words, if an agent's "negligence was only discovered within one year prior to [a plaintiff's filing] date, the [agent's] negligent act must have occurred within the last three years." *S. Marble Specialties, Inc. v. Cholley,* 2022-602 (La. App. 3 Cir. 5/3/23), 365 So. 3d 885, 891; *See Roadhouse Bar-B-Que, Inc. v. Certain Underwriters at Lloyds,* 2004-1697 (La. App. 3 Cir. 5/4/05), 909 So. 2d 619, 623-24. The three years is a "peremptive period [that] may not be interrupted or suspended[,]" but it does run from each "separate and distinct" tort alleged and "shall not apply in cases of fraud, as defined in Civil Code Article 1953."[1] La. R.S. § 9:5606; *Bel v. State Farm Mut. Auto. Ins. Co.,* 2002-1292 (La. App. 1 Cir. 2/14/03), 845 So. 2d 377, 380-82, *writ denied,* 2003-0733 (La. 5/30/03), 845 So. 2d

---

[1] "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953.

1057. "While prescription prevents the enforcement of a right by legal action, but does not terminate the natural obligation, peremption extinguishes or destroys the right." *Id.,* at 380. With respect to insurance policy renewals, peremption runs anew when an agent's actions "consist of separate and distinct acts, each of which gives rise to immediately apparent damages[,]" from the agent's acts in procuring the original policy at issue. *Id*., at 382. But if a new policy is procured by an agent, peremption runs anew from that point if the agent fails to obtain the requested coverage. *See S. Marble,* 365 So. 3d 885.

Under Louisiana law, "[a]n insurance agent . . . owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance." *Karam v. St. Paul Fire & Marine Insurance Co.,* 281 So. 2d 728, 730-31 (La. 1973); *See Graves v. State Farm Mut. Auto Ins. Co.,* 821 So. 2d 769, 773 (La. Ct. App. 2002). "[A]n insurance agent's duty to his client can be greater [than this] depending on what services the agent holds himself out as performing and on the specific relationship and agreements between the particular agent and client." *Graves,* 821 So. 2d at 773. There can be no duty breach if an insured never requests a specific insurance type. *Heidingsfelder v. Hibernia Ins., L.L.C.,* 09-0753 (La. App. 4 Cir. 11/18/09), 25 So. 3d 976, 979.

"Three factors must be established in order for plaintiffs to recover for losses resulting from an insurance agent's failure to procure insurance coverage: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and (3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage." *Upscale Fashions, Inc. v. Underwriters at Lloyd's London,* 2018-0015 (La. App. 4 Cir. 8/29/18), 254 So. 3d 784, 790, *writ denied,* 2018-1621 (La. 12/17/18), 259 So. 3d 344 (citations omitted).

**B.    Analysis**

Defendants argue that peremption began to run in this matter before 2020 so that once Plaintiffs filed claims against Nash, they were already perempted under La. R.S. § 9:5606. (R. Doc. 14). Based on Plaintiffs' petition and the arguments of the parties, this Court agrees.

A policy for Plaintiffs' Home was procured by Nash in 2014. (R. Docs. 14, 14-1). Plaintiff does not allege that this initial coverage was improper or insufficient. (R. Doc. 19 at 5). According to Defendants and Nash, this 2014 policy was continually renewed up to the present day, with the only changes being automatic inflation protection increases applied by Defendants, not Nash. (R. Docs. 14, 14-1). Plaintiffs argue that the policies covering the Home in 2020, 2021, and 2022 were all new policies because they involved "increase[s] in premium[s] … and the base policy limit[s.]" (R. Doc. 19). Plaintiffs do not allege that these increases were anything other than automatic and inflation based. (R. Docs. 8-1, 19).

Contrary to Plaintiff's argument, this Court concludes that the 2020, 2021, and 2022 policies were, in fact, simply renewals of the 2014 policy, as is regular and customary with residential property insurance. Other than these annual increases in premium and coverage amounts, no other material changed have been alleged. Other courts have similarly concluded that inflation increases do not, on their own, constitute renewals. *See Ruiz v. State Farm Fire & Cas. Co.,* No. CIV.A.06-5640, 2007 WL 128800, at *11 (E.D. La. Jan. 17, 2007); *see also Pedersen v. State Farm Fire & Cas. Co.,* No. 3:22-CV-05429, 2023 WL 378642, at *4-5 (W.D. La. Jan. 9, 2023), *report and recommendation adopted, No*. 3:22-CV-05429, 2023 WL 373881 (W.D. La. Jan. 24, 2023). In *Ruiz,* an Eastern District of Louisiana court held that where a "policy has not changed, other than an inflation[2] adjustment[,]" the policy has merely been renewed and therefore peremption does not

---

[2] The insurance agent in *Ruiz* submitted to the court an affidavit in which she stated the following "Since the inception of thew policy [plaintiffs] have continually renewed the homeowners policy on an annual basis. The renewed homeowners policies are substantially similar to the original. Other than the Property Insurance Adjustment increases,

restart upon each inflation adjustment. *Ruiz*, 2007 WL 128800, at *11. In *Pedersen*, a court in the Western District of Louisiana refers to policy iterations involving premium increases[3] and "increases in coverage limits due to [an] inflation coverage index[,]"as renewals, not new policies. *Pedersen*, 2023 WL 378642, at *4-5. The Policy iterations in the case at bar should be classified no differently; as such, they are renewals.

Accordingly, the La. R.S. § 9:5606 peremption period with respect to Nash began with the issuance of the policy in 2014 unless Nash's renewal conduct constituted separate and distinct acts from the initial policy procurement. *See Biggers v. Allstate Ins. Co.*, 886 So. 2d 1179, 1182 (La. App. 5 Cir. 2004). Plaintiffs allege that Nash promised Plaintiffs—at some unnamed point—that the policy, including inflation protection, would be able to "cover 100% of the cost to rebuild/replace" their Home. (R. Doc. 1-1 at ¶ 12). It appears these communications occurred during the procurement of the 2014 policy, because, at the time of the fire, "it had been more than five (5) years since [Nash] had any communications with [Plaintiffs] regarding the Policy [.]" (R. Doc. 14-1). Plaintiffs do not deny this, stating that they went "without continuous contact with their insurance agent[.]" (R. Doc. 19). Plaintiffs may have believed Nash was ensuring adequate coverage by approving inflation increases, but Plaintiffs have failed to allege how Nash caused that belief. (R. Docs. 1-1, 8-1). Although Nash sent the renewal letters to Plaintiffs in 2021 and 2022, no actual communications, i.e. phone calls or meetings, resulted from these letters. (R. Docs. 8-1, 8-2). These facts line up with those in *Farris v. State Farm*, where there was no "evidence that [p]laintiffs contacted [their agent] in the three years before the loss to discuss their coverage." *Farris v. State Farm Fire & Cas. Co.*, No. 2:06CV2036, 2007 WL 734682, at *6-7 (W.D. La. Jan. 22, 2007). In

---

common to most Allstate homeowners policies, there was no changes or endorsements on the policy prior[.]" Eastern District of Louisiana, Case No. 2:06-cv-09635-SSV-SS, ECF No. 6-1 at ¶ 8.

[3] State Farm provided the *Pedersen* court with each relevant policy renewal, revealing that the policy's premium was $882.00 in 2017, $1,457.64 in 2019, $1,659.04 in 2020, and $1,898.11 in 2021.Western District of Louisiana, Case No. 3:22-cv-05429-TAD-KDM, ECF No. 15-1 at 3, 5, 13, 17, 21.

that case, the court concluded that the peremptive period had run because any breach by the agent "would not have [occurred] within three years prior to the loss." *Id.* This Court concludes the same here.

"[C]ourts have refused to uphold peremption when there were annual discussions pertaining to coverage; when changes requested in the last three years were not made; and when there were annual requests for—and denial of—additional coverage [because] these acts might be construed as constituting separate and distinct acts from the original issuance of the policies involved." *Branton v. Maddox,* 42,853 (La. App. 2 Cir. 1/9/08), 974 So. 2d 190, 194 (citations omitted). Nash's actions mirror none of these situations, and therefore did not constitute separate acts of neglect sufficient to restart the peremptive period. *Id.* (Where plaintiffs and an agent had no annual meetings regarding renewals, the three-year peremptive period set forth in La. R.S. 9:5606 commenced when the original policy was issued, not at any of the renewals.). As the three-year peremption period of La. R.S. § 9:5606 started running in 2014, Plaintiffs' claims against Nash are perempted. *See Bel,* 845 So. 2d at 382 (The Court found that policy renewals were not separate and distinct acts but rather no more than a continuation of the acts of putting the original policy in place. Because these actions occurred more than three years before the renewals, plaintiffs' causes of action were perempted.); *See also Biggers,* 886 So. 2d at 1182 (Same).

Even if the 2022 policy were a new policy, Plaintiffs have failed to allege any facts to show that Nash was holding herself out as performing any specific services for Plaintiffs or that Plaintiffs requested anything of her leading up to or after the 2022 policy. *Graves,* 821 So. 2d at 773; *Heidingsfelder,* 25 So. 3d at 979. They have also failed to point to any actions by Nash during the last 3 years that warranted Plaintiffs' assumption that their home was insured in an amount sufficient to rebuild in the "then current" construction market. Instead, Plaintiffs were timely notified of their exact coverage at each renewal and do not allege any representation or guarantee by

Nash regarding that coverage during the relevant time frame. *Upscale Fashions,* 254 So. 3d at 790; *See Karam,* 281 So. 2d at 730-31 (La. 1973) ("The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage."). Thus, Plaintiffs have not properly raised a cause of action against Nash. As Nash was improperly joined as a defendant, Plaintiff's Motion must be denied.[4]

Accordingly, because Plaintiffs have failed to state a recoverable claim against Nash, defendant Nash should be dismissed without prejudice.  *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("[T]he dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal *without* prejudice in every instance.").

## III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion to Remand (R. Doc. 8) be **DENIED**, and that defendant Nash be **DISMISSED WITHOUT PREJUDICE.**[5]

Signed in Baton Rouge, Louisiana, on January 10, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The Eastern District considered a similar case in *Giardina v. Allstate Ins. Co.,* and held that joinder was proper. No. CIV.A. 06-6415, 2006 WL 3406743, at *1 (E.D. La. Nov. 22, 2006). This Court declines to follow *Giardina*.

[5] If the district judge dismisses the claims against defendant Nash without prejudice, then defendant Nash's Rule 12(b)(6) Motion to Dismiss (R. Doc. 23) should be **DENIED AS MOOT**. *See Int'l Energy Ventures Mgmt.*, 818 F.3d at 210.